IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION


| | | |
|---|---|---|
| APR, LLC, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|    v. | ) | 3:12cv1019-MHT |
| | ) | (WO) |
| AMERICAN AIRCRAFT SALES, | ) | |
| INC.; and JET TOLBERT, | ) | |
| individually, and as an | ) | |
| agent, servant, and/or | ) | |
| employee of American | ) | |
| Aircraft Sales, Inc., | ) | |
| | ) | |
|    Defendants. | ) | |

OPINION AND ORDER

Plaintiff APR, LLC brings this lawsuit against
defendants American Aircraft Sales, Inc. and Jet Tolbert
for injuries arising out of the purchase of a Cessna
aircraft facilitated by American Aircraft and Tolbert.
APR asserts a number of state-law claims, including breach
of fiduciary duties, promissory estoppel, negligence,
fraudulent misrepresentation, fraudulent suppression,
unjust enrichment, conspiracy, wantonness, conversion,
equitable estoppel, and breach of contract. The

jurisdiction of this court has been invoked pursuant to 28 U.S.C. § 1332 (diversity of citizenship) and 1441 (removal).

Now before the court are four motions: APR's motion to remand; American Aircraft and Tolbert's two motions to dismiss for lack of personal jurisdiction and failure to state a claim; and American Aircraft and Tolbert's alternative motion for transfer of venue. For the reasons that follow, the remand motion will be denied and the alternative transfer motion granted.


## I. BACKGROUND

This case arises out of the purchase of an aircraft by APR, an Alabama company with its principal place of business in Opelika. APR contends that, while it believed that it was being shepherded through the purchasing process by a responsible broker, it was instead being duped into paying a higher price so that the company it

2

believed was brokering the transaction could profit at APR's expense.

In March 2012, while APR was in the midst of its search for a corporate aircraft, one of its employees found a 1984 Cessna Citation S/II listed as available for sale on the website <www.controller.com>.  The listing provided a link to another website, <www.americanaircraftsales.com>, which is owned and maintained by American Aircraft, a corporation organized and existing under the laws of Florida.  On its website, American Aircraft describes itself as a "prestigious aircraft brokerage firm" that uses its expert assistance to help buyers navigate the negotiation and purchase process.  The Cessna itself was not owned by American Aircraft but by a company called Lewis Air Fleet.

An APR employee contacted Jet Tolbert, an American Aircraft employee, who assured him that he would help APR get "the best deal."  Compl. (Doc. No. 18) at 5.  Tolbert sent APR some of American Airlines's marketing material.

After some discussion between Tolbert and APR, Tolbert recommended that APR offer Lewis Air Fleet $ 1,050,000 to purchase the Cessna.  Although APR asked if a lower figure would suffice, Tolbert insisted that this was the necessary sum.  APR agreed to make the offer.

Tolbert began to aid APR in the purchasing process. He instructed APR to wire a deposit to an escrow company that he had selected, and he promised to present APR's offer to Lewis Air Fleet once the wire transfer was complete.  Two APR representatives flew to Jacksonville International Airport in Florida to inspect the Cessna.

On March 28, American Aircraft made an offer to purchase the Cessna from Lewis Air Fleet for less than APR had offered to pay; APR was unaware that American Aircraft had taken this step.  Shortly before closing, APR learned that American Aircraft would actually become the owner and the seller of the Cessna, but was informed that title was merely passing through American Aircraft.

APR now alleges that Tolbert and American Aircraft actually used APR's financial resources to purchase the Cessna for a lower price and then sell it to APR for a profit; APR further alleges that Tolbert used information that he learned from APR to negotiate a contract between Lewis Air Fleet and American Aircraft, and he used APR's deposit (which Tolbert had APR wire to an escrow account) to make a deposit on the Cessna for American Aircraft.

In addition to the bad deal APR alleges it received at the hands of American Aircraft and Tolbert, APR alleges that the Cessna had defects when it was delivered. APR alleges that the Cessna's systems and avionics were not "functioning normally to manufacturer's specifications" and that it was "not current on its factory-recommended maintenance program." Am. Compl. (Doc. No. 18) at 12.

5

## II. DISCUSSION

### A. Motion to Remand

APR initially filed this lawsuit in an Alabama state court.  Shortly after filing, American Aircraft and Tolbert removed it to this federal court pursuant to 28 U.S.C. § 1332 (diversity of citizenship) and 1441 (removal).  APR now moves to remand this case to state court pursuant to 28 U.S.C. § 1447.

Federal district courts have original jurisdiction over civil actions where the parties are diverse in citizenship and the amount in controversy exceeds "$ 75,000, exclusive of interest and costs."  28 U.S.C. § 1332.  APR does not contest that the diversity-of-citizenship requirement is satisfied; instead, it disputes that American Aircraft and Tolbert have adequately established that there is a sufficient amount in controversy.

Because APR did not specify the amount at issue in its complaint, American Aircraft and Tolbert bear the burden

6

of establishing the jurisdictional amount by a preponderance of the evidence.  See Lowery v. Alabama Power Co., 483 F.3d 1184, 1208 (11th Cir. 2007).  To that end, a removing defendant "may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal." Pretka v. Kolker City Plaza II, Inc., 608 F.3d 744, 755 (11th Cir. 2010).  This includes "affidavits, declarations, or other documentation."  Id. The evidence presented may be "combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations" to meet the defendant's burden.  Id. at 754.

Here, American Aircraft and Tolbert's evidence is fairly straightforward.  Principally, they submit an affidavit from Tolbert stating that American Aircraft had bought the Cessna from its original owner for $ 850,000. This statement was supported by a purchase agreement and aircraft acceptance receipt, which were both attached as exhibits.  Because, as described above, APR purchased the

7

aircraft for $ 1,050,000, American Aircraft's gross profit
was $ 200,000.    Tolbert also explained in his affidavit
that, when American Aircraft brokers the sale of an
aircraft with a market value between $ 850,000 and
$ 1,050,000, the normal commission rate is 5-8 %.    An
earlier brokerage agreement that American Aircraft had
with the owner of the Cessna at issue in this case set the
commission rate at 5 %.    Given these rates, even if APR
expected to pay the highest commission rate within the
normal range for an aircraft with this market value, the
potential    damages    in    this    case    would    still    be
approximately $ 132,000, well over the $ 75,000 mark.[1]
Tolbert's affidavit and supporting documentation, combined
with the reasonable inference that American Aircraft would

---

   1.  The court arrived at this estimate by assuming
that APR would have paid an 8 % commission (because doing
so would yield the lowest amount of damages).  At that
rate, the commission paid for an $ 850,000 aircraft would
have been $ 68,000, making the total paid $ 918,000.  The
$ 132,000 figure reflects the difference between what APR
would have paid had it been given the deal to which it
alleges it was entitled ($ 918,000. )and what it actually
paid for the aircraft ($ 1,050,000).

have charged a commission rate within its normal range, suffice to establish the requisite jurisdictional amount by a preponderance of the evidence.     APR contends that this court should discredit the evidence that American Aircraft and Tolbert append to their amended removal notice because it contradicts statements they make in their motion to dismiss.  Specifically, APR cites three instances in the dismissal motion in which American Aircraft and Tolbert point out that the APR has not specified what damages it has suffered and that the amount of damages is therefore unclear; APR argues that these statements reveal that American Aircraft and Tolbert do not know whether the amount in controversy exceeds $ 75,000.   However, American Aircraft and Tolbert's accurate assertions that APR did not specify its damages in no way preclude American Aircraft and Tolbert from presenting evidence to establish what those damages might be.

9

For these reasons, APR's motion to remand will be denied.

## B. Motion to Transfer Venue

As an alternative to their motion to dismiss, American Aircraft and Tolbert ask this court to exercise its discretion pursuant to 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Middle District of Florida.  Because a transfer of venue would render unnecessary a ruling on the merits of the dismissal motion, the court will address the alternative transfer motion first.

As an initial matter, APR argues that, pursuant to Federal Rule of Civil Procedure 12(g)(2) and (h), American Aircraft and Tolbert have waived their right to request a change of venue by not arguing that venue was improper in their motion to dismiss APR's original complaint.  However, unlike a motion to dismiss for 'improper' venue made pursuant to Rule 12(b), the waiver

10

provisions of Rule 12(h) do not govern a motion to 'transfer' venue pursuant to the 'discretionary' provisions of 28 U.S.C. § 1404(a).  See, e.g., Aalberg v. Plan 4 Coll., Inc., No. 8:09-CV-1393-T-27EAJ, 2009 WL 3698039, at *1 (M.D. Fla. Nov. 4, 2009) (Porcelli, J.) (a motion to transfer venue under § 1404(a) "is not a Rule 12(b)(3) motion and is not governed by the waiver provisions of 12(h)") (quotations and citations omitted) ; Smith v. Kyphon, 578 F. Supp. 2d 954, 957 (M.D. Tenn. 2008) (Wiseman, J.) ("[A] motion to dismiss for improper venue pursuant to Rule 12(b) is not the same as a motion to transfer to a more convenient venue under 28 U.S.C. § 1404(a) and [the latter] is therefore not subject to the waiver provisions of Rule 12(h)") (emphasis in original); Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 759 (E.D. Tex. 2000)  (Heartfield, J.) (noting that Fed. R. Civ. P. 12(h) "speaking to improper venue--not transfer of venue for convenience of the parties and the witnesses under Title 28 U.S.C. § 1404(a)") (emphasis in original).

Therefore, American Aircraft and Tolbert have not waived their right to make this request.

Section 1404(a) provides that a district court may transfer a civil action to another district or division in which it might have been brought, "For the convenience of the parties and witnesses, in the interest of justice." Federal courts grant considerable deference to a plaintiff's initial choice of forum. See In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). Accordingly, the burden is on the party requesting a § 1404(a) transfer to show that the forum it suggests is more convenient or that litigating the case there would be in the interest of justice. See C.M.B. Foods, Inc. v. Corral of Middle Georgia, 396 F. Supp. 2d 1283, 1285 (M.D. Ala. 2005) (Thompson, J.).

Determining the propriety of transfer entails two steps. "First, the court must determine whether the action could originally have been brought in the proposed transferee district court." Id. at 1286 (quotations and

citations omitted).   Second, the court "must determine whether the action should be transferred for the convenience of the parties and in the interest of justice."   Id.

Here, the first step is easily accomplished.   The Middle District of Florida has original subject-matter jurisdiction over this action based on diversity pursuant to 28 U.S.C. § 1332(a).   That court also has personal jurisdiction over American Aircraft and Tolbert, a Florida corporation and a Florida resident, respectively.   Venue is proper pursuant to the provisions of 28 U.S.C. § 1391(b)(1) and (2), which state that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district if located" or "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."   American Aircraft is a Florida corporation and has offices only in Florida; Tolbert is a resident of Florida.   Moreover, the aircraft

13

at issue was located, inspected, and delivered in Florida.

Therefore, the Middle District of Florida is a proper

venue for this action.

The court now turns to the second inquiry: whether

convenience and the interest of justice favor a transfer.

To evaluate this concern, this court may consider a broad

range of factors, including:

> "(1) the convenience of the witnesses;
> (2) the location of relevant documents
> and the relative ease of access to
> sources of proof; (3) the convenience of
> the parties; (4) the locus of operative
> facts; (5) the availability of process
> to compel the attendance of unwilling
> witnesses; (6) the relative means of the
> parties; (7) a forum's familiarity with
> the governing law; (8) the weight
> accorded a plaintiff's choice of forum;
> and (9) trial efficiency and the
> interests of justice, based on the
> totality of the circumstances."

Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir.

2005) (quotations and citations omitted).  The court must

not apply these factors mechanically, but rather

adjudicate motions to transfer "according to an

14

'individualized, case-by-case consideration of convenience and fairness.'" <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988) (quoting <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 622 (1964)).

Here, American Aircraft and Tolbert allege that, aside from the parties themselves, "there are no non-party witnesses expected other than the company in Venice[,] Florida" that inspected the Cessna before it was delivered to APR, Defs.' Mot. (Doc. No. 22) at 28, and APR does not dispute this.  The parties also agree that the location of documents is a non-issue given the ease of moving them.

The convenience to the parties, on balance, counsels in favor of a transfer.  While APR is located in Alabama, American Aircraft and Tolbert have presented evidence showing that APR has flown the Cessna at issue to Florida on 19 different occasions since the closing on the aircraft in July.  American Aircraft and Tolbert, on the other hand, are based in Florida and, by their account, "never travel to Alabama."  Defs.' Mot. (Doc. No. 22) at

15

29.  American Aircraft and Tolbert also note that, while APR is "a large corporate entity[] with its own corporate jet," American Aircraft and Tolbert stay in business by earning commissions, which would be seriously hampered if key staff had to travel to Alabama for trial.  APR does not directly dispute any of these arguments, but instead makes a blanket argument that, "The convenience of the parties amounts to a wash in this case" because APR would be inconvenienced by traveling to Florida, just as American Aircraft and Tolbert would be inconvenienced by traveling to Alabama.  However, the court finds that American Aircraft and Tolbert's arguments (uncontested by APR) are persuasive and concludes that, on balance, the convenience of the parties is better served by transferring this action to the Middle District of Florida, particularly given the parties' relative means.

Transfer is also appropriate given the locus of operative facts.  The Cessna was located in Florida and was also delivered in that State; APR visited Florida to

inspect the aircraft; and neither Tolbert nor any other representative of American Aircraft ever traveled to Alabama to discuss the transaction at issue in this case.

The concentration of the operative facts in Florida is significant for a second reason: it gives this court serious doubts about its personal jurisdiction over American Aircraft and Tolbert.   As noted, American Aircraft and Tolbert have also filed a motion to dismiss, which argues that they lack the requisite "minimum contacts" with Alabama to be subject to suit in this State.   See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 (1984) ("Due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contact with [the forum] such that the maintenance of the suit does not offend 'traditional nations of fair play and substantial justice.''") (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

In order to have minimum contacts with a forum State, the defendant must (among other requirements) have purposefully availed itself of the "privileges and benefits" of that forum's law. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 295 (1980). APR emphasizes American Aircraft's use of a website, accessible in Alabama, which is the means by which APR initiated contact. It is indisputable that "advertising that is reasonably calculated to reach the forum may constitute purposeful availment of the privileges of doing business in the forum." <u>U.S. S.E.C. v. Carillo</u>, 115 F.3d 1540, 1545 (11th Cir. 1997). However, district court cases in this circuit strongly suggest that the mere existence of a website that includes contact information is not the sort of active advertising effort that would justify the exercise of personal jurisdiction. <u>See, e.g.,</u> <u>Brannon v. Fin. Am., LLC</u>, 483 F. Supp.2d 1136, 1140-41 (M.D. Ala. 2007) (Thompson, J.) (concluding that the minimum-contacts requirement was satisfied where

18

defendants actively targeted the plaintiffs' business, as opposed to merely making "an unfocused solicitation, <u>such as an advertisement on a nationally oriented website</u>") (emphasis added); <u>Butler v. Beer Across America</u>, 83 F. Supp.2d 1261, 1268 (N.D. Ala. 2000) (Hancock, J.) (finding that "the limited degree of interactivity available on the defendants' website [was] ... insufficient to satisfy the minimum contacts requirement of due process" where the site was "closer to an electronic version of a postal reply card."). Here, American Aircraft merely gave information about its business to Sandhills Publishing Company for the purpose of advertising on Sandhills's website at <www.controller.com> and operated a website of its own at <<u>www.americanaircraftsales.com>.</u> APR's use of these websites as a means of finding and learning about American Aircraft does not show that American Aircraft purposefully availed itself of the laws of Alabama by actively advertising in this forum.

19

Further, American Aircraft and Tolbert did not initiate contact with APR or visit Alabama, nor did they have an ongoing business relationship with APR. The escrow funds were never held in Alabama, and the aircraft was never delivered in this State. Compare Banton Indus., Inc. v. Dimatic Die & Tool Co., 801 F.2d 1283, 1284 (11th Cir. 1986) (finding no personal jurisdiction where the defendant "[was] not an Alabama corporation and ha[d] no contacts with that state other than its sale of goods to an Alabama resident," nor did it "actively seek business in Alabama"; instead the "contract and sale upon which [the plaintiff] base[d] its claim arose out of [the plaintiff's] unsolicited order of goods from [the defendant," which were "tendered to [the plaintiff] in Omaha, Nebraska"), with Brannon, 483 F. Supp. 2d at 1140-41 (M.D. Ala. 2007) (Thompson, J.) (finding personal jurisdiction where the defendant "clearly directed its activities toward the [plaintiffs], and not the other way around"; and the defendant's actions "evince[d] intent to

conduct business on an ongoing basis with a particular consumer in Alabama"). The court is therefore doubtful that it has personal jurisdiction over American Aircraft and Tolbert.

In addition, that the underlying facts transpired almost exclusively in Florida dilutes the weight of APR's initial choice of forum: "[W]hen 'the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration.'" Gould v. Nat'l Life Ins. Co., 990 F.Supp. 1354, 1358 (M.D. Ala. 1998) (Albritton, J.).

Another factor this court considers is which State's law will be applied in this case. For, "there is an appropriateness ... in having the trial of a diversity case in a forum that is at home with the state law that must govern the case rather than having a court in some other forum untangle problems in conflicts of laws and in law foreign to itself." Gulf Oil Corp. v. Gilbert, 330

U.S. 501, 509 (1947). In addition, when an action is transferred upon a request from the defendants, "the transferee district court must ... apply the state law that would have been applied if there had been no change of venue." Van Dusen v. Barrack, 376 U.S. 612, 639 (1964).

Therefore, this court should first decide which State's law would govern. A federal court sitting in diversity must apply the choice-of-law rules of the jurisdiction in which it sits, see, e.g., Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998); thus, this court will apply Alabama choice-of-law rules. Here, APR makes both tort and breach-of-contract claims.

In tort cases, Alabama courts apply the substantive law of the place of injury. See Movie Gallery US, LLC v. Greenshields, 648 F. Supp. 2d 1252, 1262 (M.D. Ala. 2009) (Thompson, J.). Thus, "it is not the site of the alleged tortious act that is relevant, but the site of the injury,

or the site of the event that created the right to sue." Glass v. Southern Wrecker Sales, 990 F. Supp. 1344, 1347 (M.D. Ala. 1998 (Albritton, J.).  "[T]he place of injury for tort claims involving financial injury is 'the state in which the plaintiff suffered the economic impact.'" Movie Gallery, 648 F. Supp.2d at 1262 (quoting Glass, 990 F. Supp. at 1348).  The parties hotly dispute the site of injury in this case.

Alabama law demands that, "[i]n breach of contract actions, the law of the state in which the contract was executed determines the rights and liabilities of the parties."  Brown Mach. Works & Supply, Inc. v. Insurance Co. of North American, Inc., 951 F. Supp. 988, 992 (M.D. Ala. 1996) (De Ment, J.) (emphasis in original).  The parties even more closely dispute where the governing contract was finalized, for the contract went through a number of drafts and exchanges between the parties in Alabama and Florida.

Alabama's choice-of-law rules for torts and breach-of-contract claims, therefore, present quite challenging questions, which, fortunately, this court need not resolve. For, assuming that Alabama law governs these claims (as APR contends), the court still concludes that this case should be transferred (as American Aircraft and Tolbert contend).

A court must not mechanically apply the factors it considers when determining whether a transfer of venue is appropriate. In this case, the overall convenience of transferring this case and this court's concerns about its personal jurisdiction over American Aircraft and Tolbert weigh most heavily. See, e.g., C.M.B. Foods, 396 F. Supp.2d at 1287 ("[N]otwithstanding C.M.B.'s preference and issues of convenience, the court is concerned that a substantial question remains as to whether the Stephensons have had 'minimum contacts' with the State of Alabama such that this court can properly exercise personal jurisdiction over them in this lawsuit. For this reason,

the court concludes that the action should be
transferred.").    More specifically, convenience and
concerns about personal jurisdiction strongly outweigh the
issue of which State's law applies.

Moreover, where it is substantially uncertain as to
which State's law applies to the claims at issue, it would
seem to follow that the applicable-state-law factor should
weigh less in the court's determination of whether a
transfer is warranted pursuant to § 1404, for even after
resolution at the trial level the issue would still remain
realistically open for, and have a significant possibility
of, contrary resolution on appeal.  Here, because the law
is so uncertain as to whether Alabama or Florida law
should govern the tort and breach-of-contract claims, the
applicable-state-law factor carries must less, if, in
fact, no weight.[2]

_____

2.  Indeed, it could be argued that it would be
unwise for this court to resolve the applicable-state-law
issue since, regardless as to the resolution of that
issue, transfer is still warranted.  For, it could be
argued, that, should this court resolve the issue one way
(continued...)

25

Therefore, it is in the interest of justice to transfer this action to the Middle District of Florida. That forum undoubtedly is more convenient and has personal jurisdiction over the American Aircraft and Tolbert, and it is an appropriate venue for this action.

* * *

Accordingly, it is ORDERED as follows:

(1) Plaintiff APR, LLC's motion to remand (Doc. No. 13) is denied.

(2) Defendants American Aircraft Sales, Inc. and Jet Tolbert's alternative motion to change venue (Doc. No. 22) is granted.

(3) This lawsuit is transferred in its entirety to the United States District Court for the Middle District of Florida.

---

2.   (...continued) and the Florida court, after transfer, resolve it another way, the two courts would have been put, unnecessarily, in conflict.  Or, to put it another way, this court sees no reason to saddle the transferee court with the transferor court's resolution of the issue.

(4) All other pending motions are left for resolution after transfer.

The clerk of the court is DIRECTED to take appropriate steps to effect the transfer.

This case is closed in this court.

Done this the 19th day of February, 2013.


            /s/ Myron H. Thompson
        UNITED STATES DISTRICT JUDGE